# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEROY GUNN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 17-cv-00423-JPG-CJP ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant.[1] | ) |

## MEMORANDUM AND ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Leroy Gunn seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB and SSI on November 14, 2013, alleging a disability onset date of May 15, 2011. (Tr. 166-73.) His application was denied at the initial level and again on reconsideration. (Tr. 61-70, 73-86.) Plaintiff requested an evidentiary hearing, which Administrative Law Judge (ALJ) Michael A. Lehr conducted on February 18, 2016. (Tr. 32-60.) ALJ Lehr issued an unfavorable decision thereafter. (Tr. 20-27.) The Appeals Council denied review of plaintiff's application, rendering the ALJ's decision the final agency decision. (Tr. 3-8.) Plaintiff exhausted his administrative remedies and filed a timely Complaint in this Court. (Doc. 1.)

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. *See Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017). She is automatically substituted as defendant in this case. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

1

## Plaintiff's Arguments

Plaintiff argues the ALJ failed to build a logical bridge between the evidence and the RFC assessment and did not meet his burden to fully and fairly develop the evidentiary record.

## Applicable Legal Standards

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act. The Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 423(d)(3). Moreover, the impairment must prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 404.1572.[2]

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 404.1520(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes," then the ALJ should find that the claimant is disabled. *Id.*

At times, an ALJ may find that the claimant is unemployed and has a serious impairment, but the impairment is neither listed in nor equivalent to the impairments in the regulations—

---

[2] The legal standards for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) are largely the same. The above paragraph in this order cites the relevant statutory provisions for DIB, while the SSI provisions are located at 42 U.S.C. §§ 1382c(a)(3)(A), 1382c(a)(3)(D), and 20 C.F.R. § 416.972. Most citations herein are to the DIB regulations out of convenience, but also apply to SSI challenges.

failing at step three. If this happens, then the ALJ must ask a fourth question: (4) whether the claimant is able to perform his or her previous work. *Id.* If the claimant is not able to, then the burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant is capable of performing *any* work within the economy, in light of the claimant's age, education, and work experience. If the claimant cannot, then the ALJ should find the claimant to be disabled. *Id.*; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### The ALJ's Decision

ALJ Lehr determined plaintiff met the insured status requirement through December 31, 2013 and had not engaged in substantial gainful activity since May 15, 2011. Plaintiff had the severe impairment of osteoarthritis of the bilateral hips and degenerative disc disease of the

lumbar spine. The ALJ determine plaintiff had the RFC to perform light work, except he could only occasionally climb, balance, stoop, kneel, crouch, and crawl; could never climb ladders, ropes, or scaffolds; and could not work in concentrated exposure to extreme temperatures, vibration, or hazards; and could not operate foot controls. ALJ Lehr also opined plaintiff was unable to perform any past relevant work but was not disabled because jobs existed that he could perform. (Tr. 20-27.)

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

### 1. Agency Forms

In the agency forms, plaintiff indicated that the following conditions limited his ability to work: fibromyalgia, sciatica, scoliosis, ataxia, shooting pain in his eyes and ear, recurring sinus infections, mild dystonia, neck spasms, TMJ, rectum pain, and problems bending at the knees. His hands and arms also locked up. Plaintiff previously worked as a bus driver, laborer, substitute teacher, and surveying tech. (Tr. 197-98, 224.)

Plaintiff could prepare frozen foods and simple meals. He made his bed, washed dishes, folded and put away laundry, and grocery shopped. He found it difficult to drive at times due to pain in his eyes, ear, rectum, and feet. Plaintiff's hobbies included reading, music, watching television, riding his bicycle when his health allowed, and writing. Pain limited these activities, however. (Tr. 217-19.)

Plaintiff could lift ten to twenty pounds, walk 200 to 300 feet or for thirty to forty minutes with rest, and sit for about forty minutes to an hour. (Tr. 220.)

4

## 2. Evidentiary Hearing

ALJ Lehr conducted an evidentiary hearing on February 18, 2016, at which plaintiff was represented by counsel. The ALJ told plaintiff's attorney the record appeared "cumulative" and asked whether the attorney had any objection to evidence in the file. Plaintiff's attorney responded that he did not. (Tr. 33-35.)

Plaintiff was born on July 18, 1962, and was fifty-two at the time of the hearing. He earned an associate's degree in liberal arts and last worked part-time as a bus driver in 2011. (Tr. 39-42.)

Plaintiff testified he was unable to work due to partial paralysis, chronic fatigue, strained leg muscles, and an inability to walk, stand, sit, or lay down. He also experienced shooting pain from neuropathy. He had difficulty getting dressed, bathing, and grooming because he was losing activity of his hands and arms. (Tr. 40-41.)

Plaintiff's leg muscles were weak and in 2013 he could barely stand. He underwent physical therapy and was able to stand for short periods. Plaintiff could stand for fifteen to twenty minutes at a time before he needed to stretch. He had to lay down approximately sixty-percent of the time. With medication, plaintiff could stand for about a half-an-hour. Plaintiff could sit for about forty minutes. He believed his condition had worsened over the years. (Tr. 46-49.)

Plaintiff was unable to afford treatment until September 2014, when Obamacare took effect. He underwent an orthopedic evaluation about one year prior to the hearing. (Tr. 44, 50.)

Plaintiff lived with his significant other and their son. He helped meal prep and made an effort to wash dishes and make his bed, but still experienced difficulty completing these tasks. He leaned against his counter for support to accomplish some of these tasks. (Tr. 54.)

A vocational expert (VE) testified at the hearing as well. He opined a person with plaintiff's age, work experience, and education, who had the ultimate RFC, would be unable to perform plaintiff's past work as a bus driver. However, other jobs existed that accommodated for those restrictions. (Tr. 54-57.)

### 3. Medical Records

Dr. Vittal Chapa evaluated plaintiff on January 2, 2014. Dr. Chapa described plaintiff's physical symptoms as "very vague." Plaintiff reported reoccurring sinus infections; eye, nose, and foot pain; poor vision and balance; headaches; ataxia; dystonia; muscle spasms; his body locked-up; leg cramps; and restless leg syndrome. He also had previous injuries to his right middle finger and right knee. Plaintiff's physical examination was unremarkable. Dr. Chappa noted no ataxia, symmetric reflexes, a normal sensory examination, and full motor strength and hand grips. (Tr. 277-79.)

State agency consultant Dr. Lenore Gonzalez reviewed plaintiff's file on January 10, 2014. She opined there was insufficient evidence to support a disability decision. (Tr. 63-65.)

State agency consultant Dr. Julio Pardo also reviewed plaintiff's file on June 18, 2014 and reached the same conclusion. (Tr. 76-78.)

Plaintiff presented to nurse practitioner Sarah Smith on July 18, 2014. He reported a history of car accidents with associated symptoms of earaches and tooth pain. Plaintiff also complained of long distance vision changes. Ms. Smith assessed plaintiff with allergic rhinitis, otitis externa, sinusitis, and an acute periodontal abscess. She advised him to increase fluid intake and humidity in his environment, avoid offending allergens and getting water in his ears, and refrain from using Q Tips and eardrops. She further instructed plaintiff to perform warm

6

salt-water mouth rinses, use anti-cavity toothpaste, and to use a netti pot only as needed. Ms. Smith prescribed plaintiff Ofloxacin, Augmentin, Cetirizine, and Flonase. (Tr. 282-87.)

Physician assistant (PA) Sarah Rahman referred plaintiff to physical therapy for chronic back pain on December 16, 2014. (Tr. 381.) He began therapy in December 2014 and reported pain in his knees and back and difficulty walking. He attended a total of six sessions. During his last session on January 16, 2015, plaintiff's therapist noted minimal improvement in his lumbar range of motion and hip rotation. He walked without an antalgic gait and experienced improved mobility. The therapist recommended further orthopedic treatment. (Tr. 375.)

X-rays of plaintiff's lumbar spine from January 21, 2015 showed early degenerative changes but no evidence of fracture or malalignment. X-rays of his bilateral hips demonstrated extensive bilateral hip osteoarthritis with essentially bone on bone articulation in the superior articular surface. (Tr. 372-73.)

Dr. Daniel Schwarze evaluated plaintiff on May 21, 2015. Plaintiff complained of poor balance and bilateral hip pain. He walked with a limp and antalgic gait. On physical examination, plaintiff demonstrated limited range of motion in his hips. Flexion of his right hip was 3/5 and extension and abduction were 4/5. Flexion, extension, and abduction of plaintiff's left hip were 4/5. Patrick-Fabere tests were positive and Trendelenburg's sign was positive. Dr. Schwarze assessed plaintiff with localized, primary osteoarthritis of the pelvic region and thigh and contracture of the hip joint. He prescribed plaintiff Mobic and Soma and recommended physical therapy. (Tr. 313-16.)

Plaintiff returned to physical therapy in June 2015 and attended a total of six sessions. (Tr. 333-52.) At his last session, plaintiff reported mild improvement in his range of motion. (Tr. 333.)

7

Plaintiff presented to PA Rahman on June 17, 2015. He reported chronic back, knee, and shoulder pain due to multiple motor vehicle accidents in the past. Plaintiff described pain and numbness in his legs and feet. On physical examination, plaintiff demonstrated normal muscle strength and tone, a normal gait and station, and grossly intact sensation. PA Rahman assessed plaintiff with neuropathy and prescribed him gabapentin. Plaintiff was not interested in steroid injections or surgery. (Tr. 293-96.)

Plaintiff presented to Dr. Lloyd Thompson on July 9, 2015 with chief complaints of bilateral ear problems and difficulty swallowing. Dr. Thompson refilled plaintiff's clindamycin (Tr. 309-12.)

On July 23, 2015, plaintiff returned to PA Rahman with complaints of back, knee, and shoulder pain. He also reported pain and numbness in his legs and feet. PA Rahman discussed diet and exercise with plaintiff and referred him to a neurologist. She also refilled plaintiff's gabapentin prescription. (Tr. 290-92.)

Plaintiff presented to Dr. Muddasani Reddy on October 19, 2015. Plaintiff's neurological examination was unremarkable. Dr. Reddy assessed plaintiff with rule out peripheral neuropathy and degenerative joint disease. He suggested a workup for peripheral neuropathy and a nerve conduction study of plaintiff's bilateral lower extremities. Dr. Reddy instructed plaintiff to return for a follow-up appointment in four to six weeks. (Tr. 298-304.)

## Analysis

Plaintiff asserts the ALJ erroneously failed to explain why the evidence supported an RFC to perform light work. He further contends the ALJ did not perform his duty to fully and fairly develop the record.

A claimant's RFC is the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). An RFC assessment is a legal conclusion reserved to the Commissioner. SSR 96-5p, at *1. However, it must rest on a sufficient evidentiary basis in consideration of all of the relevant evidence in the record. SSR 96-8p, at *2.

"Although the RFC assessment is a function-by-function assessment, the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (internal quotations and citations omitted).

Here, the ALJ thoroughly summarized the objective medical evidence, plaintiff's testimony and function reports, and the medical opinions from the state agency consultants. The Seventh Circuit has held this satisfies the "narrative discussion" requirement. *Id.* Plaintiff does not identify any evidence the ALJ excluded from his discussion. Rather, plaintiff argues that the ALJ should have imposed a more restrictive RFC based on a hip x-ray that showed osteoarthritis with essentially bone-on-bone articulation and other evidence of an antalgic gait, lower sensation abnormalities, and lower extremity reflex problems. This Court, however, does not reweigh evidence or substitute its own judgment for that of the Commissioner's. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). ALJ Lehr sufficiently addressed the evidence in the record and "minimally articulated" the reasons for his findings. *Elder v. Astrue*, 529 F.3d 408, 416 (7th Cir. 2008) (internal quotations omitted).

Plaintiff further argues the ALJ failed to develop the record. "[T]he ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). To meet this duty, the Commissioner "may" seek out additional medical consultations when the evidence is insufficient to support a determination or decision. 20 C.F.R.

§ 416.919a(b). The need for additional examinations "involve[s] a question of judgment, and we generally defer to the ALJ's determination whether the record before her has been adequately developed." *Wilcox v. Astrue*, 492 F. App'x 674, 678 (7th Cir. 2012). This is particularly true in counseled cases. *Id.*

Plaintiff met the insured status requirements through December 2013, but has no medical records dated prior to January 2014. State agency consultants reviewed plaintiff's file in January and June of 2014, which consisted of a single examination by Dr. Chapa. The consultants determined plaintiff's medical conditions were not severe but they did not have enough information to conduct an RFC assessment. The ALJ gave these opinions "little weight," acknowledging that subsequent developments in the medical record showed plaintiff had severe impairments related to his hips.

Plaintiff began seeking medical treatment more regularly in 2015. The record from this period includes x-rays of plaintiff's spine and hips, multiple physical and neurological examinations, and physical therapy sessions. The last record in evidence is from Dr. Reddy, who conducted a neurological examination of plaintiff in October 2015. Plaintiff does not assert his conditions have worsened since his last medical examination or identify any new conditions. *See Poyck v. Astrue*, 414 F. App'x 859, 861-62 (7th Cir. 2011); *Wilcox*, 492 F. App'x 674 at 678-79 (7th Cir. 2012). Plaintiff only contends that the ALJ should have further developed the record regarding his limitations with standing and walking. However, "[m]ere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Nelms*, 553 F.3d at 1098 (7th Cir. 2009) (internal citations omitted).

It is unclear how an additional consultative examination would change the ALJ's analysis or what gaps in the record an examiner could fill. The ALJ noted Dr. Reddy's findings of intact

10

sensation in plaintiff's lower extremities and normal motor strength.  Dr. Reddy suggested further nerve conduction studies of plaintiff's lower extremities, but as the ALJ stated, plaintiff did not follow-up with Dr. Reddy.  The ALJ discussed the evidentiary record with plaintiff's counsel at the hearing and counsel confirmed the record was cumulative.

The ALJ also considered PA Rahman's physical examination of plaintiff in June 2015, during which she noted a normal gait and motor strength.  Moreover, the ALJ recognized plaintiff's testimony that he could only stand for fifteen to twenty minutes at a time.

The ALJ adequately developed the record, which documents plaintiff's complaints related to standing and walking.  It is "axiomatic" that the claimant bears the burden of proving his claim of disability.  *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004).  The ALJ had a sufficient basis in the current case to determine plaintiff failed to meet this burden.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **AFFIRMED.**

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATED:  MARCH 1, 2018**

s/ *J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**
